**ANDERSON et al. v. NATIONAL PRESS BLDG. CORPORATION.**

No. 10426.

United States Court of Appeals District of Columbia Circuit.

Argued April 12, 1950.

Decided June 12, 1950.

Mr. Francis C. Brooke, Washington, D. C., with whom Messrs. James Craig Peacock, Robert H. Myers, Milton M. Burke, William J. Rowan, Aaron W. Jacobson, J. Hendren Holmes and Paul B. Cromelin, all of Washington, D. C., were on the brief, for appellants.

Mr. Walter M. Bastian, Washington, D. C., for appellee.

Before EDGERTON, PRETTYMAN and BAZELON, Circuit Judges.

PRETTYMAN, Circuit Judge.

As of January 1, 1935, appellee Corporation, in the course of a reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, issued certain Adjustment Income Bonds under an indenture and supplemental indenture of mortgage. These new bonds were successors to an issue of 6½ per cent general mortgage gold bonds which were in default

for about a half million dollars of interest. The predecessors were junior to an issue of $6,220,000 5½ per cent first mortgage gold bonds, also in default. Some twelve years later, on December 2, 1946, the Corporation gave notice that it 'elected to redeem these Adjustment Income Bonds on January 1, 1947, but without interest. Interest had been paid for the year 1945; so the notice "without interest" meant without interest for the year 1946. The bondholders demanded payment of that interest, and the Corporation brought a civil action for a declaratory judgment, seeking to know whether it should pay the interest for the period January 2, 1946, to January 2, 1947. The District Court held the interest not payable and gave judgment to that effect. This appeal followed.

We agree with the District Court. The bonds provided, in part, "The Bonds are subject to redemption in whole at any time or in part by lot on any interest date prior to maturity, upon thirty days' written notice, in the manner and upon the terms provided in said Indenture, at the principal amount thereof." The indenture, as amended, provided, in part (Sections 1 and 2 of Article II):

"Section 1. The Bonds are subject to redemption at the option of the Company, in whole at any time, or in part by lot on any interest payment date prior to maturity, at an amount equal to the principal amount thereof together with, if the redemption date shall be an interest payment date, any interest which may be due on such date.

"Section 2. In case the Company shall desire to exercise the right to redeem and to pay off all or any part of said Bonds, in accordance with the right reserved so to do, it shall mail as hereinafter provided a notice to the effect that the Company has elected to redeem and pay off all of said Bonds or any part of the Bonds, as the case may be, on a date therein designated, specifying in case of partial redemption the distinctive numbers of the Bonds to be redeemed, and in every case stating that on said date there will become and be due and payable upon each Bond so to be redeemed, at the office of the Trustee, in the Borough of Manhattan, City and State of New York,

the principal thereof, together with (if the redemption date shall be an interest payment date) accrued interest thereon to the redemption date, and that from and after such date interest thereon will cease to accrue."

The language used seems clear enough. The interest payment date was April 15th each year. There was no other interest payment date. The entire issue of bonds could be redeemed at one time, and such time could be any time. The bonds could also be redeemed in part, chosen by lot, but such partial redemption could be only on an interest payment date, *i. e.*, on an April 15th. The interest was on an "if earned" basis and depended upon a calendar year computation of net earnings. The quoted provision of the indenture contemplated that if the bonds were redeemed on a day when an interest payment was due to be made (*i. e.*, on an April 15th), the payment due should be made; but that if the bonds were redeemed between interest payment dates no part-year calculation of earnings or pro-rata payment of interest should be made. The impracticality of a mid-year computation of available earnings would appear to be one obvious factor in drawing those provisions. Provisions for "if earned" interest are unlike the ordinary provisions for interest on a time basis at a stated fixed annual rate. Read in the light of the foregoing factors, the language above quoted is perfectly clear. Interest was provided in case of a redemption only if the redemption date was an interest payment date; the language was specific to that effect.

In no event was interest on these bonds payable, upon a redemption, on a time basis up to the date of redemption. Some intimation to the contrary appears at first glance in the latter part of the above-quoted provision from the indenture—"accrued interest thereon to the redemption date". But the term "accrued interest" was defined in the indenture. The definition was (Section 3 of Article XII of the Original Indenture as amended by Article V of the Supplemental Indenture): "Whenever the expression 'accrued interest', 'interest due', 'overdue interest', or other similar expression is used in this Indenture, the expression shall be deemed to mean interest which at the time shall have become payable in accordance with the provisions of Article I, Section 1 of this Indenture, and which shall not at the time have been paid." Under the provisions mentioned in that definition (Article I, Section 1 of the Indenture), interest became "payable" only on April 15th, after the net earnings for the preceding calendar year had been computed and the availability of earnings for the payment of this interest had been determined. So "accrued interest" under the definition meant interest computed and payable on the April 15th then present or last past. Other provisions of the bonds and indenture were consistent with that concept as to the interest.

The bonds were not redeemed on an April 15th. The whole outstanding issue was redeemed at another date as part of a refinancing in which these bonds were retired and a single mortgage loan substituted by the Corporation in their place. Since they were not redeemed on an "interest payment date", under the plain language of the instruments interest beyond the preceding April 15th was not due.

■ Appellants urge that the general promissory clause of the bond said that interest would be paid "until payment of said principal amount". But, so far as that general promissory clause was concerned, the bonds could not have been redeemed; the whole matter of redemption was treated in another clause of the bond. The general promise was to pay on April 15, 1950. The promissory clause, summarized, provided that the Corporation promised to pay Blank on April 15, 1950, at New York the principal sum of Blank Dollars, and to pay interest thereon from the date thereof "until payment of said principal amount" at $4\frac{1}{2}$ per cent per annum on April 15th each year; provided, however, that such interest would be paid only if and to the extent that there were net earnings available as defined in the supplemental indenture, and provided further that if the interest payable on any April 15th should be less than one-half of 1 per cent the Trustee should hold it until some succeed-

ing interest payment date. But no contention is made, or could be made, that the bonds were not redeemable before April 15, 1950. On the face of the bond, although not in the general promissory clause, redemption was provided, by the section we have quoted first hereinabove. The whole of the bond must be looked to. Moreover, even the redemption provision on the face of the bond made no reference to interest. It provided redemption "at the principal amount thereof." But it referred to "the terms provided in said Indenture". The provision for interest upon redemption was in the indenture. That document was not so separate from the bond that it could be overlooked. It was referred to in the promissory clause itself in connection with the interest and was elsewhere mentioned twelve times (in every paragraph except one) on the face of the bond. The clause of the indenture dealing with interest upon redemption, and not the general promissory clause of the bond, is the controlling provision upon this problem.

Appellants urge the general inequity of depriving them of interest. But the financing must be judged as of the time of the issue. The securities of the Corporation were in default. The refinancing agreements provided that if these particular new bonds, bearing "if earned" interest, should be redeemed on an interest payment date, the interest due and payable on that date would be paid, on the bonds to be retired as on all others. But the agreements provided that the whole issue might be retired at any date, a major readjustment in the financial structure, in which all these bondholders would receive their principal in full. The agreements, as we have shown, provided that in such event, unquestionably a happy contemplation at that time, no interest beyond the past April 15th would be payable. The transactions, negotiations, etc., leading up to the course adopted were long and complicated, but viewed in the light of those days the plan as phrased in the bond and the indenture does not appear to be an unreasonable concept.

Appellants also urge that since the full calendar year 1946 had expired when their bonds were called for redemption, the general principles as to interest reflected in the bonds and the indenture could have been fully met. Their claim is for interest for the calendar year 1946, and they say, correctly, that the availability of earnings for that year could have been determined as of the redemption date, which was January 2, 1947. The difficulty with that position is that the controlling instruments do not so provide. Those instruments fixed a "due and payable" date for interest, and that date came only once a year, on April 15th. Under their terms no interest was due and payable on January 2d.

It should be remarked that the problem underlying the controversy at bar is not whether the Corporation should or should not pay out the funds in question; the dispute is whether the funds should be paid to these bondholders or to the holders of securities junior to these bonds.

Affirmed.